RETURN DATE: DECEMBER 17, 2013

| | | |
|---|---|---|
| THE ESTATE OF A███████ A██████████ | : | SUPERIOR COURT |
| BY ITS ADMINISTRATOR HUGO | | |
| ANGELES, A█████████ A██████████, A | : | J.D.  OF HARTFORD |
| MINOR, BY HUGO ANGELES HER | : | AT HARTFORD |
| NEXT FRIEND AND FATHER, | | |
| AND HUGO ANGELES INDIVIDUALLY | | |

V.

WINDHAM COMMUNITY MEMORIAL
HOSPITAL, INC., NORTHEAST
EMERGENCY MEDICINE
SPECIALISTS, LLC, HARTFORD HEALTH
CARE CORPORATION, MARK DZIEDZIC,
DEBORAH COGGESHALL, CONSTANTINE
MESOLOGITES, COREY ROY,
GENERATIONS FAMILY HEALTH CENTER
INC., BERETT SHAPS, JEFFERSON
RADIOLOGY P.C, AND STEVE LEE          :          NOVEMBER 21, 2013

## COMPLAINT

**FIRST COUNT**          **(Negligence as to Generations Family Health Center Inc and Berett Shaps)**

1.      On or about January 30, 2013, the plaintiff, Hugo Angeles, was appointed

Administrator  of the Estate of his daughter, A██████ A██████████, the plaintiff's decedent, by

the Probate Court for the District of Windham-Colchester, and acting as such

Administrator, brings this action pursuant to §52-555 of the Connecticut General

Statutes.

2.   On October 18, 2011, A█████ A█████ presented to her pediatrician, the defendant Berett Shaps, M.D. (hereinafter "Dr. Shaps"), at the defendant Generations Family Health Center Inc. (hereinafter "Generations") in Willimantic, Connecticut with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm.

3.   The plaintiff's decedent had been examined by the defendant Dr. Shaps at the defendant Generations on several prior occasions where bruising was observed and documented.  At the time of said October 18, 2011 office visit Dr. Shaps knew that the A█████ A█████ had a history of bruising.

4.   On October 18, 2011 the defendant Dr. Shaps knew or should have known that A█████ A█████ resided with her younger sister, Ar█████ A█████, mother, and her mother's boyfriend in Willimantic, Connecticut.

5.   At said time and place the Dr. Shaps ordered blood tests, including a Von Willebrand factor test and a Factor VIII test, because of A████'s history of bruising and referred her to the emergency room at the defendant Windham Community Memorial Hospital, Inc. (hereinafter "Windham Hospital") for further medical treatment and evaluation.

6.   Thereafter, A█████ A█████ presented to the Windham Hospital emergency room where she was examined and evaluated by the defendant Constantine Mesologites, M.D. (hereinafter "Dr. Mesologites"), the defendant Corey Roy, R.N.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ✦ P.O. Drawer 1430 ✦ New London, CT 06320 ✦ Tel. (860) 442-0444 ✦ Juris No. 102515

(hereinafter "Nurse Roy"), and other nurses and medical personnel at the defendant Windham Hospital.

      7.      On October 18, 2011 Dr. Mesologites, Nurse Roy, and other nurses and medical personnel at the defendant Windham Hospital observed A█████'s significant facial bruising, black eyes, and swollen face.

      8.      At said time and place Dr. Mesologites, Nurse Roy, and other nurses and medical personnel at the defendant Windham Hospital were made aware that A█████ had received medical treatment for bruising in the past and that her coagulation testing was negative.

      9.      At said time and place Dr. Mesologites, Nurse Roy, and other nurses and medical personnel at the defendant Windham Hospital were aware that additional blood tests, Von Willebrand factor and Factor VIII tests, had been ordered for A█████ and were pending.

      10.     During her examination at the defendant Windham Hospital Dr. Mesologites, Nurse Roy, and other nurses and medical personnel at the defendant Windham Hospital determined there was no relevant past medical history or social history applicable to their October 18, 2011 emergency room treatment and diagnosis of A█████'s facial injuries and bruising.

      11.     While at the defendant Windham Hospital, CT images of A█████s facial bones were obtained and reviewed by the defendant Steve Lee, M.D. (hereinafter "Dr.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◆ P.O. Drawer 1430 ◆ New London, CT 06320 ◆ Tel. (860) 442-0444 ◆ Juris No. 102515

Lee"). Dr. Lee's interpretation of the CT image included "mild soft tissue swelling frontally in the midline" and "no fracture."

12. Despite reports of repeated and frequent bruising and their observation and examination of A███'s facial injuries and bruising on October 18, 2011, no other imaging was ordered, requested, and/or performed on A███ on October 18, 2011 or at anytime thereafter prior to her death on November 23, 2011.

13. Dr. Lee concluded from his review of A███'s facial bone CT image that she was not abused or neglected and advised Dr. Mesologites, Nurse Roy, and other nurses and medical personnel at the defendant Windham Hospital of his conclusions.

14. On October 18, 2011 at the conclusion of his examination of the plaintiff's decedent and his own review of her facial bone CT image, Dr. Mesologites diagnosed A███ with face pain and a facial contusion, and further stated in his medical record "do not suspect neglect or abuse; no clinical findings or bruising."

15. Thereafter, Dr. Mesologites informed Dr. Shaps of his diagnosis, his review of A███'s facial bone CT image, and that he did not suspect child neglect or child abuse. Dr. Mesologites then discharged A███ from the defendant Windham Hospital into the care of her mother.

16. On October 18, 2011 the Dr. Mesologites, Nurse Roy, and other nurses and medical personnel at the defendant Windham Hospital knew that A███ A███

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ❖ P.O. Drawer 1430 ❖ New London, CT 06320 ❖ Tel. (860) 442-0444 ❖ Juris No. 102515

resided with her younger sister, A█████A█████, mother, and her mother's boyfriend in Willimantic, Connecticut.

17.     The facial injuries and bruising reported to the defendants and observed on October 18, 2011 occurred when A███ was punched in the forehead near the bridge of her nose by her mother's live-in boyfriend while in her home in Willimantic, Connecticut.

18.     On or about October 18, 2011 A███s Von Willebrand factor and Factor VIII test results from the defendant Windham Hospital were completed and indicated that A█████'s clotting and Von Willebrand factors were both normal.

19.     On or about October 21, 2011 Dr. Shaps received A█████'s Von Willebrand factor and Factor VIII test results from the defendant Windham Hospital.

20.     On November 14, 2011 A█████'s teachers observed bruising on her body including her jaw line, upper lip, and nose.  Said bruising was the result of physical abuse by her mother's boyfriend.

21.     On November 15, 2011 A█████'s teachers observed additional abusing on her body including her ears and the bridge of her nose.  Said bruising was the result of physical abuse by her mother's boyfriend.

22.     On November 15, 2011 Dr. Shaps was informed that teachers from A█████'s school had observed and expressed concerns about said new bruising on A█████

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◆ P.O. Drawer 1430 ◆ New London, CT 06320 ◆ Tel. (860) 442-0444 ◆ Juris No. 102515

23.     Despite being advised on November 15, 2011 that A███ had sustained additional bruising and injury Dr. Shaps failed to diagnose and identify the cause of A███'s bruising and injuries as child abuse.

24.     From October 18, 2011 up to and including November 23, 2011 A███ remained in the care and custody of her mother and her mother's live-in boyfriend and was repeatedly abused by her mother's boyfriend sustaining physical and emotional injuries, bruising, and lacerations to her body.

25.     On November 23, 2011 A███ A███ died after suffering great pain and emotional distress.  A███s cause of death was blunt traumatic chest and abdominal injuries after being physically abused by her mother's boyfriend and her manner of death was homicide.

26.     On October 18, 2011 and at all times thereafter, the defendant Dr. Shaps, was licensed as a practitioner of medicine in the State of Connecticut holding herself out to the general public as a competent physician and as a physician skilled and capable of engaging in the practice of pediatrics.

27.     At all times mentioned herein, the defendant Generations was a corporation organized and existing under the laws of the State of Connecticut comprised of doctors, pediatricians, nurses, and other healthcare professionals with an office located in Willimantic, Connecticut, and held itself out to the general public as

being ready, willing, and able to provide medical and pediatric care and treatment to

patients, including A█████ A██████.

28.    At all times mentioned herein, the defendant Dr. Shaps was and is a

physician practicing medicine with the defendant Generations and acting as their agent,

apparent agent, servant, and/or employee.  In her professional capacity as a licensed

physician and pursuant to her agency, servitude or employment with the defendant

Generations and in her general authority to do so the defendant Dr. Shaps treated

children and patients including the plaintiff's decedent A████ A██████.

29.    At all times mentioned herein, the defendant Dr. Shaps was performing all

services and duties as a pediatric physician within the scope course and of her

employment and/or agency and/or apparent agency with the defendant Generations.

30.    The injuries and damages to the plaintiff's decedent A█████ A██████

hereinafter described were caused by the negligence, carelessness, and deviations

from the appropriate standards of care of the defendant Dr. Shaps and the defendant

Generations acting through its agents, apparent agents, servants, and employees in

one or more of the following respects, in that they:

      a.  failed to recognize and accurately diagnose A████'s ongoing bruising and
          facial injuries as an indicator of child abuse,

      b.  failed to properly diagnose the traumatic origin of A██████'s ongoing
          bruising and facial injuries on October 18, 2011 or anytime thereafter,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◦ P.O. Drawer 1430 ◦ New London, CT 06320 ◦ Tel. (860) 442-0444 ◦ Juris No. 102515

c.  failed to examine and/or provide proper medical treatment to the plaintiff's decedent on November 15, 2011 or anytime thereafter upon learning that A████ had sustained additional facial bruising and injuries,

d.  failed to properly diagnose child abuse on November 15, 2011 or anytime thereafter upon learning A████ had sustained additional facial bruising and injuries,

e.  improperly diagnosed A████ with a blood disorder and/or coagulation abnormality including Von Willebrand's disease,

f.  misdiagnosed the cause of A████'s bruising and facial injuries as a blood disorder and/or coagulation abnormality including Von Willebrand's disease on October 18, 2011 or at anytime thereafter,

g.  failed to properly diagnose A████'s bruising and facial injuries on October 21, 2011 or at anytime thereafter despite receiving A████'s normal Von Willebrand and Factor VIII test results from the defendant Windham Hospital,

h.  failed to consult with the defendant Dr. Mesoglites or any of the nurses, doctors, and/or medical staff at the defendant Windham Hospital upon receiving A████'s normal Von Willebrand and Factor VIII test results,

i.  failed to consult with the defendant Dr. Mesoglites or any of the nurses, doctors, and/or medical staff at the defendant Windham Hospital on November 15, 2011 or anytime thereafter upon learning that A████ had sustained additional facial bruising and injuries,

j.  failed to properly follow-up with the plaintiff's decedent on November 15, 2011 or anytime thereafter to confirm her excluded diagnosis of child abuse,

k.  failed to properly follow-up with the plaintiff's decedent on November 15, 2011 or anytime thereafter to confirm that A████ was receiving proper medical care and treatment for her facial bruising and injuries,

l.  failed to properly recommend additional follow-up medical treatment to the plaintiff decedent on October 21, 2011 or at anytime thereafter,

8

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◦ P.O. Drawer 1430 ◦ New London, CT 06320 ◦ Tel. (860) 442-0444 ◦ Juris No. 102515

m.  recommended on October 21, 2011 that the plaintiff decedent return to her
medical office for further evaluation, examination, and medical treatment
on an "as needed" basis when she knew of A███'s history of frequent
bruising and facial injury,

n.  recommended on October 21, 2011 that the plaintiff decedent return to her
medical office for further evaluation, examination, and medical treatment
in one month when she knew of A███'s history of frequent bruising and
facial injury,

o.  continued to exclude the diagnosis of child abuse after receiving A███'s
normal blood test results on October 21, 2011,

p.  improperly diagnosed a bleeding/blood disorder as the cause of the
A███'s facial bruising and injuries,

q.  failed to properly recommend and/or provide medical treatment to the
plaintiff's decedent upon learning that A███ had sustained additional
facial bruising and injuries on November 15, 2011,

r.  discharged the plaintiff's decedent into the care and custody of her mother
October 21, 2011 they knew or should have known that A███ would be
subjected to continued and repeated child abuse,

s.  failed to properly conduct and/or document a complete skin examination of
A███ on October 18, 2011 or anytime thereafter,

t.  relied upon explanations and assertions as to the cause of A███'s
bruising and facial injuries from the her mother as accurate and reliable
when they knew or should have known that said injuries were the result of
repeated child abuse,

u.  continued to rely upon explanations and assertions from the decedent's
mother to exclude a diagnosis of child abuse as a cause of A███'s
injuries despite the frequency of repeated complaints of facial bruising and
trauma,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

v.  continued to rely upon explanations and assertions from the decedent's mother to exclude a diagnosis of child abuse as a cause of A████'s injuries upon learning that A████ had sustained additional facial bruising and injuries on November 15, 2011,

w.  continued to rely upon explanations and assertions from the decedent's mother to exclude a diagnosis of child abuse as a cause of Athena's injuries after receiving A████s normal Von Willebrand and Factor VIII test results from the defendant Windham Hospital,

x.  failed to properly obtain an accurate social history despite multiple complaints of bruising and facial injuries and the presence of child abuse indicators,

y.  failed to properly obtain an accurate medical history despite multiple complaints of bruising and facial injuries and the presence of child abuse indicators, and

z.  failed to medically screen and obtain an accurate medical and social history from the plaintiff decedent's sister, Ar████ A████ despite the presence child abuse indicators.

31.  During the course of the treatment the defendant Dr. Shaps and the defendant Generations acting through its agents, apparent agents, servants, and employees deviated from the acceptable standard of care incumbent of a physician and medical practice purportedly skilled and specializing in pediatric medicine.

32.  As a result of the negligence and carelessness of the defendant Dr. Shaps and the defendant Generations acting through its agents, apparent agents, servants, and employees A████ A████ suffered extreme emotional distress, mental and physical pain, and her untimely death.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

33.    At the time of her death, A████ A████ was three (3) years old in otherwise good health.  Her death destroyed her ability to carry out life's activities, including the ability to earn income and enjoy her family and friends, resulting in substantial loss and damage to her estate.

34.    As a result of her death, A████ A████'s Estate incurred expenses for medical care, medical treatment, and hospital care, as well as for funeral and related final expenses.

**SECOND COUNT**    **(Negligence as to Windham Community Memorial Hospital, Inc., Northeast Emergency Medicine Specialists, LLC, Hartford Healthcare Corporation, Constantine Mesologites, and Corey Roy)**

1-18.  Paragraphs One (1) through Eighteen (18) of the First Count are hereby made and incorporated as Paragraphs One (1) through Eighteen (18) of this the Second Count as if more fully set forth herein.

19.    From October 18, 2011 up to and including November 23, 2011 A████ remained in the care and custody of her mother and her mother's live-in boyfriend and was repeatedly abused by her mother's boyfriend sustaining physical and emotional injuries, bruising, and lacerations to her body.

20.    On November 23, 2011 A████ A████ died after suffering great pain and emotional distress.  A████'s cause of death was blunt traumatic chest and abdominal

injuries after being physically abused by her mother's boyfriend and her manner of death was homicide.

  21. On October 18, 2011 and at all times mentioned herein, the defendant Dr. Mesologites was licensed as a practitioner of medicine in the State of Connecticut holding himself out to the general public as a competent physician and as a physician skilled and capable of engaging in the practice of emergency medicine.

  22. At all times mentioned herein, the defendant Northeast Emergency Medicine Specialists, LLC (hereinafter "Northeast Emergency") was a private practice group of physicians who provide emergency medical staffing to the defendant Windham Hospital.

  23. At all times mentioned herein, the Northeast Emergency was and is a company organized and existing under the laws of the State of Connecticut.

  24. At all times mentioned herein, the defendant Dr. Mesologites was and is a physician practicing medicine with the defendant Northeast Emergency and acting as their agent, apparent agent, servant, and/or employee.  In his professional capacity as a licensed physician and pursuant to his agency, apparent agency, servitude or employment with the defendant Northeast Emergency and in his general authority to do so the defendant Dr. Mesologites treated patients including the plaintiff's decedent A▮▮▮ A▮▮▮.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

25.     At all times mentioned herein, the defendant Dr. Mesologites was performing all services and duties as a physician within the scope course and of his employment with the defendant Northeast Emergency.

26.     At all times mentioned herein, the defendant Windham Hospital. was a non-stock corporation existing under the laws of the State of Connecticut which owned, operated, and/or maintained a hospital located in Willimantic, Connecticut, and held itself out to the general public as having at its disposal all reasonable, necessary, fit, and proper personnel, physicians, facilities, appointments, apparatuses, appliances, and surroundings and held itself out to the general public as being ready, willing, and able to provide medical care and treatment to patients, including the plaintiff's decedent A█████ A██████.

27.     At all times mentioned herein, the defendant Dr. Mesologites was a member of the medical staff, an agent, apparent agent, servant, and/or employee of the defendant Windham Hospital providing medical services with all of the attendant rights and duties associated with that position.

28.     At all times mentioned herein, the defendant Dr. Mesologites was performing all services and duties as a physician within the scope course and of his employment and/or agency and/or apparent agency with the defendant Windham Hospital.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ❖ P.O. Drawer 1430 ❖ New London, CT 06320 ❖ Tel. (860) 442-0444 ❖ Juris No. 102515

29.    At all times mentioned herein, the defendant Windham Hospital was a member of the defendant Hartford Health Care Corporation, a Connecticut corporation which, through its agents, apparent agents, servants, and employees offered and provided medical care, treatment, and advice to patients at and from its medical facility located in Windham, Connecticut.

30.    At all times mentioned herein, the defendant Hartford Health Care Corporation was and is a company organized and existing under the laws of the State of Connecticut.

31.    At all times mentioned herein, the defendant Dr. Mesologites was and is a physician practicing medicine with the defendant Hartford Health Care Corporation and acting as their agent, apparent agent, servant, and/or employee.  In his professional capacity as a licensed physician and pursuant to his agency, servitude or employment with the defendant Hartford Health Care Corporation and in his general or apparent authority to do so the defendant Dr. Mesologites treated patients including the plaintiff's decedent A       A

32.    At all times mentioned herein, the defendant Dr. Mesologites was performing all services and duties as a physician within the scope course and of his employment and/or agency and/or apparent agency with the defendant Hartford Health Care Corporation.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ⬩ P.O. Drawer 1430 ⬩ New London, CT 06320 ⬩ Tel. (860) 442-0444 ⬩ Juris No. 102515

33.     On October 18, 2011 and at all times mentioned herein, the defendant Nurse Roy was a registered nurse licensed under the laws of the State of Connecticut and an employee, agent, or servant of the defendant Windham Hospital and held himself out to the general public, as a competent registered nurse skilled and capable of engaging in the practice of nursing and emergency medicine.

34.     At all times mentioned herein, the defendant Nurse Roy was performing all services and duties as a registered nurse within the scope and course of his employment and/or agency and/or apparent agency with the defendant Windham Hospital.

35.     At all times mentioned herein, the defendant Nurse Roy was and is a registered nurse practicing medicine with the defendant Hartford Health Care Corporation and acting as their agent, apparent agent, servant, and/or employee.  In his professional capacity as a registered nurse and pursuant to her agency, apparent agency, servitude or employment with the defendant Hartford Health Care Corporation and in his general authority to do so the defendant Nurse Roy treated patients including the plaintiff's decedent A█████ A█████

36.     At all times mentioned herein, the defendant Nurse Roy was performing all services and duties as a registered nurse within the scope and course of his employment and/or agency and/or apparent agency with the defendant Hartford Health Care Corporation.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street  ◦  P.O. Drawer 1430  ◦  New London, CT 06320  ◦  Tel. (860) 442-0444  ◦  Juris No. 102515

37.     The injuries and damages to the plaintiff's decedent A████ A████ hereinafter described were caused by the negligence, carelessness, and deviations from the appropriate standards of care of the defendant Dr. Mesologites, the defendant Nurse Roy, and the defendants Northeast Emergency, Windham Hospital, and Hartford Healthcare Corporation acting through their agents, apparent agents, servants, and employees in one or more of the following respects, in that they:

a.   failed to recognize and accurately diagnose A████s ongoing bruising and facial injuries as an indicator of child abuse,

b.   failed to properly diagnose the traumatic origin of A████ ongoing bruising and facial injuries on October 18, 2011 or anytime thereafter,

c.   improperly diagnosed A████with a blood disorder and/or coagulation abnormality including Von Willebrand's disease,

d.   misdiagnosed the cause of A████s bruising and facial injuries as a blood disorder and/or coagulation abnormality including Von Willebrand's disease on October 18, 2011 or at anytime thereafter,

e.   failed to properly diagnose A████'s bruising and facial injuries on October 21, 2011 or at anytime thereafter despite receiving A████s normal Von Willebrand and Factor VIII test results,

f.   failed to consult with the defendant Dr. Shaps or any of the nurses, doctors, and/or medical staff at the defendant Generations upon receiving A████'s normal Von Willebrand and Factor VIII test results,

g.   failed to consult with the defendant Dr. Shaps or any of the nurses, doctors, and/or medical staff at the defendant Generations on October 21, 2011 or anytime thereafter,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◦ P.O. Drawer 1430 ◦ New London, CT 06320 ◦ Tel. (860) 442-0444 ◦ Juris No. 102515

h.  failed to properly follow-up with the plaintiff's decedent anytime after her discharge on October 18, 2011 to confirm their excluded diagnosis of child abuse,

i.  failed to properly follow-up with the plaintiff's decedent anytime after her discharge on October 18, 2011 to confirm that A████ was receiving proper medical care and treatment for her facial bruising and injuries,

j.  failed to properly follow-up with the plaintiff's decedent on October 21, 2011 or anytime thereafter when they knew or should have known that A████'s normal Von Willebrand and Factor VIII test results were normal,

k.  continued to exclude the diagnosis of child abuse after receiving A████ normal blood test results on October 21, 2011,

l.  improperly diagnosed a bleeding/blood disorder as the cause of the A████'s facial bruising and injuries,

m.  relied upon explanations and assertions as to the cause of A████'s bruising and facial injuries from the her mother as accurate and reliable when they knew or should have known that said injuries were the result of repeated child abuse,

n.  continued to rely upon explanations and assertions from the decedent's mother to exclude a diagnosis of child abuse as a cause of A████'s injuries despite the frequency of repeated complaints of facial bruising and trauma,

o.  continued to rely upon explanations and assertions from the decedent's mother to exclude a diagnosis of child abuse as a cause of A████'s injuries after receiving A████'s normal Von Willebrand and Factor VIII test results,

p.  failed to properly obtain an accurate social history despite multiple complaints of bruising and facial injuries and the presence of child abuse indicators,

q.  failed to properly obtain an accurate medical history despite multiple complaints of bruising and facial injuries and the presence of child abuse indicators,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◆ P.O. Drawer 1430 ◆ New London, CT 06320 ◆ Tel. (860) 442-0444 ◆ Juris No. 102515

r.  discharged the plaintiff's decedent into the care and custody of her mother when they knew or should have known that A█████ would be subjected to continued and repeated child abuse,

s.  failed to recognize the risk factors for child maltreatment and abuse on October 18, 2011 or anytime thereafter,

t.  failed to properly conduct and/or document a complete skin examination of A█████ on October 18, 2011 or at anytime thereafter,

u.  failed to conduct and/or obtain a skeletal trauma survey for A█████ on October 18, 2011 or at anytime thereafter when they were aware of A█████s history of frequent and repeated bruising,

v.  did not perform a proper diagnostic workup when the plaintiff's decedent presented to the emergency room on October 18, 2011 or at anytime thereafter,

w.  failed to admit A█████ A█████ to the defendant Windham Hospital on October 18, 2011 pending consultation with a specialist in child maltreatment and abuse when they were aware of A█████'s history of frequent and repeated bruising and knew or should have known that A█████was the victim of continued and repeated child abuse,

x.  failed to consult with a specialist in child maltreatment and abuse on October 18, 2011 when they were aware of A█████s history of frequent and repeated bruising and knew or should have known that A█████ was the victim of continued and repeated child abuse,

y.  failed to refer the plaintiff's decedent to a specialist in child maltreatment and abuse on October 18, 2011 when they were aware of A█████'s history of frequent and repeated bruising and knew or should have known that A█████ was the victim of continued and repeated child abuse,

z.  failed to consult with a specialist in child maltreatment and abuse on October 21, 2011 or anytime thereafter when they were aware of A█████s history of frequent and repeated bruising and A█████s normal Von Willebrand and Factor VIII test results were normal,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◦ P.O. Drawer 1430 ◦ New London, CT 06320 ◦ Tel. (860) 442-0444 ◦ Juris No. 102515

aa. misdiagnosed the A█████'s bruising and facial injuries and their cause on October 18, 2011 when they knew or should have known that A█████ was the victim of continued and repeated child abuse, and

bb. failed to properly document and record A█████s normal Von Willebrand factor and Factor VIII test results in her medical chart on October 21, 2011 or anytime thereafter.

38.     During the course of the treatment the defendant Dr. Mesologites, the defendant Nurse Roy, and the defendants Northeast Emergency, Windham Hospital, and Hartford Healthcare Corporation acting through their agents, apparent agents, servants, and employees deviated from the acceptable standard of care incumbent of a physician, nurse and medical practice purportedly skilled and specializing in emergency medicine.

39.     As a result of the negligence and carelessness of the defendant Dr. Mesologites, the defendant Nurse Roy, and the defendants Northeast Emergency, Windham Hospital, and Hartford Healthcare Corporation acting through their agents,, apparent agents, servants, and employees A█████ A█████ suffered extreme emotional distress, mental and physical pain, and her untimely death.

40.     At the time of her death, A█████ A█████ was three (3) years old in otherwise good health.  Her death destroyed her ability to carry out life's activities, including the ability to earn income and enjoy her family and friends, resulting in substantial loss and damage to her estate.

41.     As a result of her death, A█████ A█████'s Estate incurred expenses for

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street  ◦  P.O. Drawer 1430  ◦  New London, CT 06320  ◦  Tel. (860) 442-0444  ◦  Juris No. 102515

medical care, medical treatment, and hospital care, as well as for funeral and related final expenses.

**THIRD COUNT**     **(Negligence as to Jefferson Radiology, Steve Lee, Windham Community Memorial Hospital, Inc., and Hartford Healthcare Corporation)**

1-18.   Paragraphs One (1) through Eighteen (18) of the First Count are hereby made and incorporated as Paragraphs One (1) through Eighteen (18) of this the Third Count as if more fully set forth herein.

19.     From October 18, 2011 up to and including November 23, 2011 A▮▮▮ remained in the care and custody of her mother and her mother's live-in boyfriend and was repeatedly abused by her mother's boyfriend sustaining physical and emotional injuries, bruising, and lacerations to her body.

20.     On November 23, 2011 A▮▮▮ A▮▮▮ died after suffering great pain and emotional distress.  A▮▮▮s cause of death was blunt traumatic chest and abdominal injuries after being physically abused by her mother's boyfriend and her manner of death was homicide.

21.     On October 18, 2011 and at all times mentioned herein, the Defendant Dr. Lee was licensed as a practitioner of medicine in the State of Connecticut holding himself out to the general public as a competent physician and as a physician skilled and capable of engaging in the practice of radiology.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◦ P.O. Drawer 1430 ◦ New London, CT 06320 ◦ Tel. (860) 442-0444 ◦ Juris No. 102515

22.     At all times mentioned herein, the defendant Jefferson Radiology P.C. (hereinafter "Jefferson Radiology") was a professional corporation organized and existing under the laws of the State of Connecticut conducting a radiological practice comprised of radiologists, technicians, and other healthcare professionals specializing in radiology and imaging with its principal place of business in Hartford, Connecticut and held itself out to the general public as being ready, willing, and able to provide medical care and treatment to patients, including A█████ A█████.

23.     At all times mentioned herein, the Dr. Lee was and is a physician practicing medicine with the defendant Jefferson Radiology and acting as their agent,, apparent agent, servant, and/or employee.  In his professional capacity as a licensed physician and pursuant to his agency, servitude or employment with the defendant Jefferson Radiology and in his general authority to do so the defendant Dr. Lee treated patients including the plaintiff's decedent A█████ A█████

24.     At all times mentioned herein, the Dr. Lee was performing all services and duties as a physician within the scope course and of his employment, and/or agency, and/or apparent agency with the defendant Jefferson Radiology.

25.     At all times mentioned herein, the defendant Jefferson Radiology had an agreement, contract, and/or other arrangement with the defendant Windham Hospital whereby the defendant Jefferson Radiology and its servants, agents, apparent agents, and/or employees would use the radiological facility of the defendant Windham Hospital

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street  ※  P.O. Drawer 1430  ※  New London, CT 06320  ※  Tel. (860) 442-0444  ※  Juris No. 102515

and conduct examinations, read, report, and offer opinions on imaging performed at the Defendant Windham Hospital, in other words, a joint venture.

26.     At all times mentioned herein, the defendant Windham Hospital. was a non-stock corporation existing under the laws of the State of Connecticut which owned, operated, and/or maintained a hospital located in Willimantic, Connecticut,  and held itself out to the general public as having at its disposal all reasonable, necessary, fit, and proper personnel, physicians, facilities, appointments, apparatuses, appliances, and surroundings and held itself out to the general public as being ready, willing, and able to provide medical care and treatment to patients, including the plaintiff's decedent A█████ A██████.

27.     At all times mentioned herein, the defendant Dr. Lee was a member of the medical staff, an agent, apparent agent, servant, and/or employee of the defendant Windham Hospital providing medical services with all of the attendant rights and duties associated with that position.

28.     At all times mentioned herein, the defendant Dr. Lee was performing all services and duties as a physician within the scope course and of his employment and/or agency and/or apparent agency with the defendant Windham Hospital.

29.     At all times mentioned herein, the defendant Windham Hospital was a member of the defendant Hartford Health Care Corporation, a Connecticut corporation which, through its agents, servants, and employees offered and provided medical care,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street  •  P.O. Drawer 1430  •  New London, CT 06320  •  Tel. (860) 442-0444  •  Juris No. 102515

treatment, and advice to patients at and from its medical facility located in Windham, Connecticut.

30.    At all times mentioned herein, the defendant Dr. Lee was and is a physician practicing medicine with the defendant Hartford Health Care Corporation and acting as their agent, apparent agent, servant, and/or employee.  In his professional capacity as a licensed physician and pursuant to his agency, apparent agency, servitude or employment with the defendant Hartford Health Care Corporation and in his general authority to do so the defendant Dr. Lee treated patients including the plaintiff's decedent A███████ A███████.

31.    At all times mentioned herein, the defendant Dr. Lee was performing all services and duties as a physician within the scope course and of his employment and/or agency and/or apparent agency with the defendant Hartford Health Care Corporation.

32.    The injuries and damages to the plaintiff's decedent Athena Angeles hereinafter described were caused by the negligence, carelessness, and deviations from the appropriate standards of care of the defendant Dr. Lee, and the defendants Jefferson Radiology, Windham Hospital, and Hartford Healthcare Corporation acting through their agents, apparent agents, servants, and employees in one or more of the following respects, in that they:

a.  failed to recognize and accurately diagnose A████'s ongoing bruising and facial injuries as an indicator of child abuse,

b.  failed to properly diagnose the traumatic origin of A████s ongoing bruising and facial injuries on October 18, 2011 or anytime thereafter,

c.  concluded that the plaintiff decedent was not the victim of child abuse and/or neglect solely from his review of A████s facial bone CT image on October 18, 2011,

d.  misdiagnosed A████s bruising and facial injuries and their cause on October 18, 2011 when they knew or should have known that A████was the victim of continued and repeated child abuse

e.  failed to recommend and/or request additional testing and/or studies prior concluding that A████ A████ was not the victim of child abuse and/or neglect,

f.  failed to properly diagnose A████s bruising and facial injuries on October 21, 2011 or at anytime thereafter despite receiving A████s normal Von Willebrand and Factor VIII test results,

g.  failed to consult with the defendant Dr. Shaps or any of the nurses, doctors, and/or medical staff at the defendant Generations on October 18, 2011,

h.  failed to consult with the defendant Dr. Shaps or any of the nurses, doctors, and/or medical staff at the defendant Generations upon receiving A████s normal Von Willebrand and Factor VIII test results,

i.  failed to consult with the defendant Dr. Shaps or any of the nurses, doctors, and/or medical staff at the defendant Generations on October 21, 2011 or anytime thereafter,

j.  failed to consult with the defendant Dr. Mesologites upon completion of A████s Von Willebrand and Factor VIII tests on October 21, 2011,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

k.  failed to properly follow-up with the plaintiff's decedent anytime after her discharge on October 18, 2011 to confirm their excluded diagnosis of child abuse,

l.  failed to properly follow-up with the plaintiff's decedent anytime after her discharge on October 18, 2011 to confirm that A███████ was receiving proper medical care and treatment for her facial bruising and injuries,

m.  failed to properly follow-up with the plaintiff's decedent on October 21, 2011 or anytime thereafter when they knew or should have known that A█████'s normal Von Willebrand and Factor VIII test results were normal,

n.  continued to exclude the diagnosis of child abuse after A█████s blood test results were normal on October 21, 2011,

o.  relied upon explanations and assertions as to the cause of A█████'s bruising and facial injuries from the her mother as accurate and reliable when they knew or should have known that said injuries were the result of repeated child abuse,

p.  continued to rely upon explanations and assertions from the decedent's mother to exclude a diagnosis of child abuse as a cause of A█████s injuries despite the frequency of repeated complaints of facial bruising and trauma,

q.  continued to rely upon explanations and assertions from the decedent's mother to exclude a diagnosis of child abuse as a cause of A█████s injuries after receiving A█████'s normal Von Willebrand and Factor VIII test results,

r.  advised medical personnel that A█████ A█████ was not the victim of child abuse and/or neglect solely from his review of her facial bone CT image on October 18, 2011,

s.  failed to properly obtain an accurate social history despite multiple prior complaints of bruising and facial injuries and the presence of child abuse indicators,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ❖ P.O. Drawer 1430 ❖ New London, CT 06320 ❖ Tel. (860) 442-0444 ❖ Juris No. 102515

t.  failed to properly obtain an accurate medical history despite multiple prior complaints of bruising and facial injuries and the presence of child abuse indicators,

u.  failed to recognize the risk factors for child maltreatment and abuse on October 18, 2011 or anytime thereafter,

v.  failed to conduct and/or obtain a skeletal trauma survey for A█████ on October 18, 2011 or at anytime thereafter when they knew or should have known of A████'s history of frequent and repeated bruising,

w.  failed to admit and/or recommend that A████ A████s be admitted to the defendant Windham Hospital on October 18, 2011 pending consultation with a specialist in child maltreatment and abuse when they knew or should have known of A████'s history of frequent and repeated bruising and knew or should have known that A████ was the victim of continued and repeated child abuse, and

x.  failed to consult with a specialist in child maltreatment and abuse on October 18, 2011 or anytime thereafter when they were knew or should have known of A████s history of frequent and repeated bruising and knew or should have known that A████was the victim of continued and repeated child abuse.

33.  During the course of the treatment the defendant Dr. Lee, and the defendants Jefferson Radiology, Windham Hospital, and Hartford Healthcare Corporation acting through their agents, apparent agents, servants, and employees deviated from the acceptable standard of care incumbent of a physician and medical practice purportedly skilled and specializing in radiology and emergency medicine.

34.  As a result of the negligence and carelessness of the defendant Dr. Lee, and the defendants Jefferson Radiology, Windham Hospital, and Hartford Healthcare Corporation acting through their agents, apparent agents, servants, and employees

Athena Angeles suffered extreme emotional distress, mental and physical pain, and her untimely death.

35.    At the time of her death, A████ A████ was three (3) years old in otherwise good health.  Her death destroyed her ability to carry out life's activities, including the ability to earn income and enjoy her family and friends, resulting in substantial loss and damage to her estate.

36.    As a result of her death, A████ A████'s Estate incurred expenses for medical care, medical treatment, and hospital care, as well as for funeral and related final expenses.

**FOURTH COUNT**          **(Negligence as to Windham Community Memorial Hospital, Inc., Northeast Emergency Medicine Specialists, LLC, Hartford Healthcare Corporation, Mark Dziedzic, and Deborah Coggeshall)**

1-18.  Paragraphs One (1) through Eighteen (18) of the First Count are hereby made and incorporated as Paragraphs One (1) through Eighteen (18) of this the Fourth Count as if more fully set forth herein.

19.    From October 18, 2011 up to and including November 23, 2011 A████ remained in the care and custody of her mother and her mother's live-in boyfriend and was repeatedly abused by her mother's boyfriend sustaining physical and emotional injuries, bruising, and lacerations to her body.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ✦ P.O. Drawer 1430 ✦ New London, CT 06320 ✦ Tel. (860) 442-0444 ✦ Juris No. 102515

20.     On November 14, 2011 A█████'s teachers observed bruising on her body including her jaw line, upper lip, and nose.  Said bruising was the result of physical abuse by her mother's boyfriend.

21.     On November 15, 2011 A█████s teachers observed additional abusing on her body including her ears and the bridge of her nose.  Said bruising was the result of physical abuse by her mother's boyfriend.

22.     On November 23, 2011 at approximately 1:42 a.m. A████ A█████ presented to the defendant Windham Hospital's emergency room with a scalp laceration and recent history of fever and vomiting.

23.     During said medical appointment A█████s scalp laceration was examined and treated by the defendant Mark Dziedzic, M.D. (hereinafter "Dr. Dziedzic"), the defendant nurse Deborah Coggeshall (hereinafter "Nurse. Coggeshall") and other nurses and medical personnel at the defendant Windham Hospital.

24.     At the same time and place the defendant Dr. Dziedzic, the defendant Nurse Coggeshall, and other nurses and medical personnel at the defendant Windham Hospital determined there was no relevant past medical history or social history applicable to their November 23, 2011 emergency room treatment and diagnosis of A█████s injuries.

25.     At the conclusion of A████s November 23, 2011 emergency room treatment, the Dr. Dziedzic diagnosed A████ with a scalp laceration and febrile illness. He treated her scalp laceration with a staple repair and her febrile illness with Tylenol.

26.     Said scalp laceration occurred when her mother's live-in boyfriend shoved A████ into a sink in their home in Willimantic, Connecticut.

27.     At no time during A████s November 23, 2011 emergency room visit did the defendant Dr. Dziedzic, the defendant Nurse Coggeshall, or any other nurses or medical personnel at the defendant Windham Hospital physically and/or visually examine A████s body including her abdomen, chest, and extremities for injury and/or bruising.

28.     At no time during Athena's November 23, 2011 emergency room visit did the defendant Dr. Dziedzic, the defendant Nurse Coggeshall, or any other nurses or medical personnel at the defendant Windham Hospital diagnose child abuse as the cause of A████s injuries despite A████s prior admission to the defendant Windham Hospital on October 18, 2011 with facial trauma and bruising resulting in a DCF investigation.

29.     At no time during Athena's November 23, 2011 emergency room visit did the defendant Dr. Dziedzic, the defendant Nurse Coggeshall, or any other nurses or medical personnel at the defendant Windham Hospital review A████s Windham Hospital medical records from October 18, 2011.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◦ P.O. Drawer 1430 ◦ New London, CT 06320 ◦ Tel. (860) 442-0444 ◦ Juris No. 102515

30.     At the time of her discharge on November 23, 2011 the defendant Dr. Dziedzic, the defendant Nurse Coggeshall, and other nurses and medical personnel at the defendant Windham Hospital knew or should have known that A████ A████ resided with her younger sister, Ar████ A████, mother, and her mother's boyfriend in Willimantic, Connecticut.

31.     On November 23, 2011 the defendant Dr. Dziedzic, the defendant Nurse Coggeshall, and other nurses and medical personnel at the defendant Windham Hospital discharged A████ from the defendant Windham Hospital emergency room into the care and custody of her mother.

32.     Thereafter, on November 23, 2011 at approximately 9:39 p.m. A████ was brought to the defendant Windham Hospital in cardiac arrest with visible signs of trauma and bruises on her abdomen and extremities and internal bleeding.  Thereafter, A████ was transported by Life Star to the Connecticut Children's Medical Center for further medical care and treatment of her injuries.

33.     Said internal injuries and bruises to A████'s abdomen occurred when her mother's live-in boyfriend punched A████ repeatedly in the stomach and rib cage.

34.     On November 23, 2011 A████ A████ died after suffering great pain and emotional distress.  A████s cause of death was blunt traumatic chest and abdominal injuries after being physically abused by her mother's boyfriend and her manner of death was homicide.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ● P.O. Drawer 1430 ● New London, CT 06320 ● Tel. (860) 442-0444 ● Juris No. 102515

35.     On November 23, 2011 and at all times mentioned herein, Dr. Dziedzic was licensed as a practitioner of medicine in the State of Connecticut holding himself out to the general public as a competent physician and as a physician skilled and capable of engaging in the practice of emergency medicine.

36.     At all times mentioned herein, the defendant Northeast Emergency was a private practice group of physicians who provide emergency medical staffing to the defendant Windham Hospital.

37.     At all times mentioned herein, the defendant Northeast Emergency was and is a company organized and existing under the laws of the State of Connecticut.

38.     At all times mentioned herein, the defendant Dr. Dziedzic was and is a physician practicing medicine with the defendant Northeast Emergency and acting as their agent, apparent agent, servant, and/or employee.  In his professional capacity as a licensed physician and pursuant to his agency, apparent agency, servitude or employment with the defendant Northeast Emergency and in his general authority to do so the defendant Dr. Dziedzic treated patients including the plaintiff's decedent A▮▮▮ A▮▮▮.

39.     At all times mentioned herein, Dr. Dziedzic was performing all services and duties as a physician within the scope course and of his employment and/or agency and/or apparent agency with the defendant Northeast Emergency.

40.     At all times mentioned herein, the defendant Windham Hospital was a non-stock corporation existing under the laws of the State of Connecticut which owned, operated, and/or maintained a hospital located in Willimantic, Connecticut,  and held itself out to the general public as having at its disposal all reasonable, necessary, fit, and proper personnel, physicians, facilities, appointments, apparatuses, appliances, and surroundings; and held itself out to the general public as being ready, willing, and able to provide medical care and treatment to patients, including the plaintiff's decedent A█████ A██████.

41.     At all times mentioned herein, the defendant Dr. Dziedzic was a member of the medical staff, an agent, apparent agent, servant, and/or employee of the defendant Windham Hospital providing medical services with all of the attendant rights and duties associated with that position.

42.     At all times mentioned herein, the defendant Dr. Dziedzic was performing all services and duties as a physician within the scope course and of his employment and/or agency and/or apparent agency with the defendant Windham Hospital.

43.     At all times mentioned herein, the defendant Windham Hospital was a member of the defendant Hartford Health Care Corporation, a Connecticut corporation which, through its agents, apparent agents, servants, and employees offered and provided medical care, treatment, and advice to patients at and from its medical facility located in Windham, Connecticut.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◦ P.O. Drawer 1430 ◦ New London, CT 06320 ◦ Tel. (860) 442-0444 ◦ Juris No. 102515

44.     At all times mentioned herein, the defendant Hartford Health Care
Corporation was and is a company organized and existing under the laws of the State of
Connecticut.

45.     At all times mentioned herein, the defendant Dr. Dziedzic was and is a
physician practicing medicine with the defendant Hartford Health Care Corporation and
acting as their agent, apparent agent, servant, and/or employee.  In his professional
capacity as a licensed physician and pursuant to his agency, apparent agency,
servitude or employment with the defendant Hartford Health Care Corporation and in his
general authority and/or agency and/or apparent agency to do so the defendant Dr.
Dziedzic treated patients including the plaintiff's decedent A████ A█████.

46.     At all times mentioned herein, the defendant Dr. Dziedzic was performing
all services and duties as a physician within the scope course and of his employment
and/or agency and/or apparent agency with the defendant Hartford Health Care
Corporation.

45.     On November 23, 2011 and at all times mentioned herein, the defendant
Nurse Coggeshall was a registered nurse licensed under the laws of the State of
Connecticut and an employee, agent, apparent agent, or servant of the defendant
Windham Hospital and held herself out to the general public, as a competent registered
nurse skilled and capable of engaging in the practice of nursing and emergency
medicine.

46.     At all times mentioned herein, the defendant Nurse Coggeshall was performing all services and duties as a registered nurse within the scope and course of her employment and/or agency and/or apparent agency with the defendant Windham Hospital.

47.     At all times mentioned herein, the defendant Nurse Coggeshall was and is a registered nurse practicing medicine with the defendant Hartford Health Care Corporation and acting as their agent, apparent agent, servant, and/or employee.  In her professional capacity as a registered nurse and pursuant to her agency, apparent agency, servitude or employment with the defendant Hartford Health Care Corporation and in her general and/or apparent authority to do so the defendant Deborah Coggeshall treated patients including the plaintiff's decedent A██████ A██████

48.     At all times mentioned herein, the defendant Nurse Coggeshall was performing all services and duties as a registered nurse within the scope and course of her employment and/or agency and/or apparent agency with the defendant Hartford Health Care Corporation.

49.     The injuries and damages to the plaintiff's decedent Athena Angeles hereinafter described were caused by the negligence, carelessness, and deviations from the appropriate standards of care of the defendant Dr. Dziedzic, the defendant Nurse Coggeshall, and the defendants Northeast Emergency Medicine, Windham

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

Hospital, and Hartford Healthcare Corporation acting through their agents, apparent

agents, servants, and employees in one or more of the following respects, in that they:

a. failed to recognize and accurately diagnose A████s ongoing bruising, facial injuries, and scalp lacerations as an indicator of child abuse,

b. failed to properly diagnose the traumatic origin of A████s ongoing bruising, facial injuries, and scalp laceration on November 23, 2011,

c. improperly diagnosed A████ with a blood disorder and/or coagulation abnormality including Von Willebrand's disease,

d. misdiagnosed the cause of A████ bruising, facial injuries, and scalp laceration as a blood disorder and/or coagulation abnormality including Von Willebrand's disease on November 23, 2011,

e. misdiagnosed the cause of A████s bruising, facial injuries, and scalp laceration on November 23, 2011 when they knew or should have known of A████'s history of frequent and repeated bruising and facial injuries,

f. misdiagnosed the cause of A████'s bruising and facial injuries on November 23, 2011 when they knew or should have known that she had presented to the Windham Hospital emergency room, accompanied with personnel from DCF on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm,

g. failed to consult with the defendant Dr. Shaps or any of the nurses, doctors, and/or medical staff at the defendant Generations on November 23, 2011 when they knew or should have known that A████had presented to the defendant Dr. Shaps at her medical office at the defendant Generations on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm resulting in a DCF investigation,

h. failed to consult with the defendant Dr. Shaps or any of the nurses, doctors, and/or medical staff at the defendant Generations on November 23, 2011,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◆ P.O. Drawer 1430 ◆ New London, CT 06320 ◆ Tel. (860) 442-0444 ◆ Juris No. 102515

i.  failed to consult with the defendant Dr. Mesologites or any of the nurses, doctors, and/or medical staff at the defendant Windham Hospital who examined the plaintiff's decedent on October 18, 2011,

j.  relied upon explanations and assertions as to the cause of A███s bruising, facial injuries, and lacerations from the her mother as accurate and reliable when they knew or should have known that said injuries were the result of repeated child abuse,

k.  continued to rely upon explanations and assertions from the decedent's mother to exclude a diagnosis of child abuse as a cause of A███s injuries despite the frequency of repeated complaints of facial bruising and trauma

l.  continued to rely upon explanations and assertions from the decedent's mother to exclude a diagnosis of child abuse as a cause of A███s injuries when they knew or should have known that she had presented to the Windham Hospital emergency room, accompanied with personnel from DCF, on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm,

m.  failed to properly obtain an accurate social history on November 23, 2011 despite prior complaints of bruising and facial injuries and the presence of child abuse indicators,

n.  failed to properly obtain an accurate social history on November 23, 2011 when they knew or should of known that A███ had presented to the Windham Hospital emergency room, accompanied with personnel from DCF, on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm,

o.  failed to properly obtain an accurate medical history on November 23, 2011 despite prior complaints of bruising and facial injuries and the presence of child abuse indicators,

p.  failed to properly obtain an accurate medical history on November 23, 2011 when they knew or should of known that A███had presented to the Windham Hospital emergency room, accompanied with personnel

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ○ P.O. Drawer 1430 ○ New London, CT 06320 ○ Tel. (860) 442-0444 ○ Juris No. 102515

from DCF, on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm,

q.  discharged the plaintiff's decedent into the care and custody of her mother when they knew or should have known that A████ would be subjected to continued and repeated child abuse,

r.  recommended that the plaintiff decedent return to the defendant Dr. Shaps at her offices at the defendant Generations for further evaluation, examination, and medical treatment in one week when they knew or should have known of A████'s prior complaints of bruising and facial injuries and her October 18, 2011 emergency room visit,

s.  failed to recognize the risk factors and signs for child maltreatment and abuse on November 23, 2011,

t.  failed to properly conduct and/or document a complete skin examination of A████ on November 23, 2011 when they knew or should have known of her history of frequent and repeated bruising and facial injuries and her October 18, 2011 emergency room visit,

u.  failed to conduct and/or obtain a skeletal trauma survey for A████ on November 23, 2011 when they knew or should have known of her history of frequent and repeated bruising, including her October 18, 2011 emergency room visit at the defendant Windham Hospital,

v.  did not perform a proper diagnostic workup when the plaintiff's decedent presented to the emergency room on October 18, 2011 or at anytime thereafter,

w.  failed to admit A████ A████ to the defendant Windham Hospital on November 23, 2011 pending consultation with a specialist in child maltreatment and abuse when they were aware of A████'s history of frequent and repeated bruising and knew or should have known that A████ was the victim of continued and repeated child abuse,

x.  failed to consult with a specialist in child maltreatment and abuse on November 23, 2011 when they knew or should have known of A████s history of frequent and repeated bruising and that A████ was the victim of continued and repeated child abuse,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ● P.O. Drawer 1430 ● New London, CT 06320 ● Tel. (860) 442-0444 ● Juris No. 102515

y.  failed to refer the plaintiff's decedent to a specialist in child maltreatment and abuse on November 23, 2011 when they knew or should have known of A█████'s history of frequent and repeated bruising and that she was the victim of continued and repeated child abuse,

z.  misdiagnosed the A█████'s scalp laceration and injuries and their cause on November 23, 2011 when they knew or should have known that Athena was the victim of continued and repeated child abuse,

aa. failed to physically and/or visually examine A█████'s body including her abdomen, chest, and extremities for injury and/or bruising on November 23, 2011,

bb. failed to request, consult, and/or review A█████'s medical records from her October 18, 2011 Windham Hospital Emergency room visit, and

cc. failed to conduct a proper and thorough physical examination of A█████

50.     During the course of the treatment the defendant Dr. Dziedzic, the defendant Nurse Coggeshall, and the defendants Northeast Emergency Medicine, Windham Hospital, and Hartford Healthcare Corporation acting through their agents, apparent agents, servants, and employees deviated from the acceptable standard of care incumbent of a physician, nurse and medical practice purportedly skilled and specializing in emergency medicine.

51.     As a result of the negligence and carelessness of the defendant Dr. Dziedzic, the defendant Nurse Coggeshall, and the defendants Northeast Emergency Medicine, Windham Hospital, and Hartford Healthcare Corporation acting through their

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ● P.O. Drawer 1430 ● New London, CT 06320 ● Tel. (860) 442-0444 ● Juris No. 102515

agents, apparent agents, servants, and employees A███ A█████ suffered extreme emotional distress, mental and physical pain, and her untimely death.

52.    At the time of her death, A███ A█████ was three (3) years old in otherwise good health.  Her death destroyed her ability to carry out life's activities, including the ability to earn income and enjoy her family and friends, resulting in substantial loss and damage to her estate.

53.    As a result of her death, A███ A█████'s Estate incurred expenses for medical care, medical treatment, and hospital care, as well as for funeral and related final expenses.

**FIFTH COUNT**            **(Negligence as to Windham Community Memorial Hospital, Inc., Northeast Emergency Medicine Specialists, LLC, and Hartford Healthcare Corporation)**

1-36.   Paragraphs One (1) through Thirty-six (36) of the Second Count are hereby made and incorporated as Paragraphs One (1) through Thirty-six (36) of this the Fifth Count as if more fully set forth herein.

37-66. Paragraphs Twenty (20) through Forty-eight (48) of the Fourth Count are hereby made and incorporated as Paragraphs thirty-seven (37) through Sixty-six (66) of this the Fifth Count as if more fully set forth herein.

67.    The injuries and damages to the plaintiff's decedent A███ A█████ hereinafter described were caused by the negligence, carelessness, and deviations from the appropriate standards of care of the defendants Northeast Emergency

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ✦ P.O. Drawer 1430 ✦ New London, CT 06320 ✦ Tel. (860) 442-0444 ✦ Juris No. 102515

Medicine, Windham Hospital, and Hartford Healthcare Corporation acting through their

agents, apparent agents, servants, and employees in one or more of the following

respects, in that they:

    a.    failed to properly supervise their physicians, nurses, and medical
personnel in carrying out their duties,

    b.    failed to adequately train employee physicians, nurses, and medical
personnel to provide adequate treatment to patients, including the
plaintiff's decedent,

    c.    failed to adequately train physicians, nurses, and medical personnel
working at the defendant Windham Hospital at any time after the plaintiff
decedent was discharged from the Windham Hospital emergency room on
October 18, 2011 to properly diagnose child abuse and the presence of
child abuse indicators and risk factors,

    d.    failed to adequately train physicians, nurses, and medical personnel
working at the defendant Windham Hospital at any time after the plaintiff
decedent was discharged from the Windham Hospital emergency room on
October 18, 2011 to properly monitor and follow minor children suspected
to be victims of child abuse, including the plaintiff's decedent,

    e.    failed to adequately train physicians, nurses, and medical personnel
working at the defendant Windham Hospital at any time after the plaintiff
decedent was discharged from the Windham Hospital emergency room on
October 18, 2011 to provide proper and adequate medical treatment to
minor children suspected to be victims of child abuse, including the
plaintiff's decedent,

    f.    failed to have proper procedures in place at any time after the plaintiff
decedent was discharged from the Windham Hospital emergency room on
October 18, 2011 regarding the proper diagnosis of child abuse and the
presence of child abuse indicators and risk factors,

    g.    failed to have proper procedures in place at any time after the plaintiff
decedent was discharged from the Windham Hospital emergency room on

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◆ P.O. Drawer 1430 ◆ New London, CT 06320 ◆ Tel. (860) 442-0444 ◆ Juris No. 102515

October 18, 2011 to ensure that minor children suspected to be victims of child abuse of child abuse, including the plaintiff's decedent, are properly monitored and followed,

h.      failed to have proper procedures in place at any time after the plaintiff decedent was discharged from the Windham Hospital emergency room on October 18, 2011 regarding the proper treatment of minor children suspected to be victims of child abuse, including the plaintiff's decedent, and

i.      permitted the plaintiff's decedent to be discharged in the care and custody of her mother on November 23, 2011 when they knew or should of known that A▇ had presented to the Windham Hospital emergency room, accompanied with personnel from DCF, on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm.

68.     As a result of the negligence and carelessness of the defendants

Northeast Emergency Medicine, Windham Hospital, and Hartford Healthcare

Corporation acting through their agents, apparent agents, servants, and employees

A▇ A▇ suffered extreme emotional distress, mental and physical pain, and her

untimely death.

69.     At the time of her death, A▇ A▇ was three (3) years old in

otherwise good health.  Her death destroyed her ability to carry out life's activities,

including the ability to earn income and enjoy her family and friends, resulting in

substantial loss and damage to her estate.

70.     As a result of her death, A▇ A▇'s Estate incurred expenses for

medical care, medical treatment, and hospital care, as well as for funeral and related

final expenses.

**SIXTH COUNT**                    **(Negligence as to Generations Family Health Center Inc)**

　　　1-29.   Paragraphs One (1) through Twenty-nine (29) of the First Count are

hereby made and incorporated as Paragraphs One (1) through Twenty-nine (29) of this

the Sixth Count as if more fully set forth herein.

　　　30.    The injuries and damages to the plaintiff's decedent A████ A████

hereinafter described were caused by the negligence, carelessness, and deviations

from the appropriate standards of care of the defendant Generations acting through its

agents, apparent agents, servants, and employees in one or more of the following

respects, in that they:

> a.   failed to properly supervise their physicians, nurses, and medical personnel in carrying out their duties,
>
> b.   failed to adequately train employee physicians, nurses, and medical personnel to provide adequate treatment to patients, including the plaintiff's decedent,
>
> c.   failed to adequately train physicians, nurses, and medical personnel working at the defendant medical practice at any time after the plaintiff decedent presented to the defendant Dr. Shaps at her medical office at the defendant Generations on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm to properly diagnose child abuse and the presence of child abuse indicators and risk factors,
>
> d.   failed to adequately train physicians, nurses, and medical personnel working at the defendant medical practice at any time after the plaintiff decedent presented to the defendant Dr. Shaps at her medical office at the defendant Generations on October 18, 2011 with significant facial

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ∘ P.O. Drawer 1430 ∘ New London, CT 06320 ∘ Tel. (860) 442-0444 ∘ Juris No. 102515

bruising, two black eyes, a swollen face, and bruising on her left upper arm to properly monitor and follow minor children suspected to be victims of child abuse, including the plaintiff's decedent,

e.      failed to adequately train physicians, nurses, and medical personnel working at the defendant medical practice at any time after the plaintiff decedent presented to the defendant Dr. Shaps at her medical office at the defendant Generations on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm to provide proper and adequate medical treatment to minor children suspected to be victims of child abuse, including the plaintiff's decedent,

f.      failed to have proper procedures in place at any time after the plaintiff decedent presented to the defendant Dr. Shaps at her medical office at the defendant Generations on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm regarding the proper diagnosis of child abuse and the presence of child abuse indicators and risk factors,

g.      failed to have proper procedures in place at any time after the plaintiff decedent presented to the defendant Dr. Shaps at her medical office at the defendant Generations on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm to ensure that minor children suspected to be victims of child abuse of child abuse, including the plaintiff's decedent, are properly monitored and followed, and

h.      failed to have proper procedures in place at any time after the plaintiff decedent presented to the defendant Dr. Shaps at her medical office at the defendant Generations on October 18, 2011 with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm regarding the proper treatment of minor children suspected to be victims of child abuse, including the plaintiff's decedent.

31.      As a result of the negligence and carelessness of the defendant

Generations acting through its agents, apparent agents, servants, and employees

A█████ A█████ suffered extreme emotional distress, mental and physical pain, and her untimely death.

32.    At the time of her death, A██ A██████ was three (3) years old in otherwise good health.  Her death destroyed her ability to carry out life's activities, including the ability to earn income and enjoy her family and friends, resulting in substantial loss and damage to her estate.

33.    As a result of her death, A████ A██████'s Estate incurred expenses for medical care, medical treatment, and hospital care, as well as for funeral and related final expenses.

**SEVENTH COUNT**          **(Negligence as to Generations Family Health Center Inc and Berett Shaps)**

1.    At all times mentioned herein, Ar██ A████ was a minor who brings this writ, summons and complaint by Hugo Angeles, her next friend and father.

2.    On October 18, 2011 and for sometime prior thereto, the plaintiff At█████ A█████ was a patient of the defendant Dr. Shaps and the defendant Generations and had been examined by Dr. Shaps at her pediatric office in Willimantic, Connecituct.

3.    At all times herein, the defendant Dr. Shaps knew or should have known that Ar████ A████ resided with her sister, A████ A████, mother, and her mother's boyfriend in Willimantic, Connecticut.

4.    On September 23, 2011, Ar███ A████ presented to the defendant Dr.

Shaps at the defendant Generations in Willimantic, Connecticut with swelling and cuts on her lip.  Dr. Shaps treated said lip injuries and discharged Ar███ into the care and custody of her mother.

5.      On October 18, 2011, A███ A███ presented to the defendant Dr. Shaps at the defendant Generations in Willimantic, Connecticut with significant facial bruising, two black eyes, a swollen face, and bruising on her left upper arm.

6.      A███ A███ had been examined by the defendant Dr. Shaps at the defendant Generations on several prior occasions where bruising was observed and documented.  At the time said October 18, 2011 office visit Dr. Shaps knew that the A███ A███ had a history of bruising.

7.      A███ A███'s facial injuries and bruising reported to the defendants and observed on October 18, 2011 occurred when she was punched in the forehead near the bridge of her nose by her mother's live-in boyfriend while in her home in Willimantic, Connecticut.

8.      On November 14, 2011 A███s teachers observed bruising on her body including her jaw line, upper lip, and nose.  Said bruising was the result of physical abuse by her mother's boyfriend.

9.      On November 15, 2011 A███'s teachers observed additional abusing on her body including her ears and the bridge of her nose.  Said bruising was the result of physical abuse by her mother's boyfriend.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◦ P.O. Drawer 1430 ◦ New London, CT 06320 ◦ Tel. (860) 442-0444 ◦ Juris No. 102515

10.     On November 15, 2011 Dr. Shaps was informed that teachers from A█████'s school had observed and expressed concerns about said new bruising on A█████.

11.     Despite being advised on November 15, 2011 that A█████ had sustained additional bruising and injury Dr. Shaps failed to diagnose and identify the cause of A█████'s bruising and injuries as child abuse.

12.     On November 21, 2011 An█████'s teachers observed bruising on her left eye and face.  Said bruising was the result of physical abuse by her mother's boyfriend.

13.     Despite being advised that An█████ had sustained bruising and injury to her left eye and face Dr. Shaps failed to diagnose and identify the cause of An█████'s injuries as child abuse.

14.     On November 23, 2011 at approximately 1:42 a.m. A█████ A█████ presented to the defendant Windham Hospital's emergency room with a scalp laceration and a recent history of fever and vomiting.

15.     Said scalp laceration occurred when her mother's live-in boyfriend shoved A█████ into a sink in their home in Willimantic, Connecticut.

16.     Thereafter, on November 23, 2011 at approximately 9:39 p.m. An█████ and A█████ were brought to the defendant Windham Hospital with multicolored bruising on An█████s face and arms, swelling and abrasions on her check, and bruising and swelling to her forehead.  Said bruising and injuries were the result of physical abuse by

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◦ P.O. Drawer 1430 ◦ New London, CT 06320 ◦ Tel. (860) 442-0444 ◦ Juris No. 102515

her mother's boyfriend.

17.    A████ presented to said emergency room in cardiac arrest with visible
signs of trauma and bruises on her abdomen and extremities and internal bleeding.
Thereafter, A████ was transported by Life Star to the Connecticut Children's Medical
Center for further medical care and treatment of her injuries.

18.    Said internal injuries and bruises to A████s abdomen occurred when her
mother's live-in boyfriend punched A████ repeatedly in the stomach and rib cage.

19.    On November 23, 2011 A████ A████died after suffering great pain and
emotional distress.  A███a's cause of death was blunt traumatic chest and abdominal
injuries after being physically abused by her mother's boyfriend and her manner of
death was homicide.

20.    From October 18, 2011 up to and including November 23, 2011 A██████
A████ remained in the care and custody of her mother and her mother's live-in
boyfriend and was repeatedly abused by her mother's boyfriend sustaining physical and
emotional injuries, bruising, and lacerations to her body.

21.    On October 18, 2011 and at all times thereafter, the defendant Dr. Shaps,
was licensed as a practitioner of medicine in the State of Connecticut holding herself out
to the general public as a competent physician and as a physician skilled and capable
of engaging in the practice of pediatrics.

22.    At all times mentioned herein, the defendant Generations was a

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ▪ P.O. Drawer 1430 ▪ New London, CT 06320 ▪ Tel. (860) 442-0444 ▪ Juris No. 102515

corporation organized and existing under the laws of the State of Connecticut comprised of doctors, pediatricians, nurses, and other healthcare professionals with an office located in Willimantic, Connecticut, and held itself out to the general public as being ready, willing, and able to provide medical and pediatric care and treatment to patients, including An████ A████

23.    At all times mentioned herein, the defendant Dr. Shaps was and is a physician practicing medicine with the defendant Generations and acting as their agent, apparent agent, servant, and/or employee.  In her professional capacity as a licensed physician and pursuant to her agency, apparent agency, servitude or employment with the defendant Generations and in her general authority to do so the defendant Dr. Shaps treated children and patients including the minor plaintiff A████ An████

24.    At all times mentioned herein, the defendant Dr. Shaps was performing all services and duties as a pediatric physician within the scope course and of her employment and/or agency and/or apparent agency with the defendant Generations.

25.    The injuries and damages to the minor plaintiff An████ An████ hereinafter described were caused by the negligence, carelessness, and deviations from the appropriate standards of care of the defendant Dr. Shaps and the defendant Generations acting through its agents, apparent agents, servants, and employees in one or more of the following respects, in that they:

a.  failed to recognize and accurately diagnose Ar███ and A███'s ongoing bruising and facial injuries as an indicator of child abuse,

b.  failed to properly diagnose the traumatic origin of Ar███ and/or A███'s ongoing bruising and facial injuries on October 18, 2011 or anytime thereafter,

c.  failed to examine and/or provide proper medical treatment to Ar███ and A███ A███ on November 15, 2011 or anytime thereafter upon learning that Ar███ and/or Af███ had sustained additional facial bruising and injuries,

d.  failed to properly diagnose child abuse on November 15, 2011 or anytime thereafter upon learning Ar███ and/or Af███ had sustained additional facial bruising and injuries,

e.  failed to properly follow-up with Ar███ and/or Af███ on November 15, 2011 or anytime thereafter to confirm that they were receiving proper medical care and treatment for their facial bruising and injuries,

f.  failed to properly recommend additional follow-up medical treatment to Ar███ on October 18, 2011 or anytime thereafter,

g.  failed to properly recommend and/or provide medical treatment to the Ar███ upon learning that A███ had sustained additional facial bruising and injuries on November 15, 2011,

h.  failed to properly recommend and/or provide medical treatment to the Ar███ upon learning that she had sustained additional facial bruising and injuries on November 21, 2011,

i.  failed to properly conduct and/or document a complete skin examination of Ar███ on October 18, 2011 or anytime thereafter,

j.  relied upon explanations and assertions as to the cause of Ar███ and A███'s bruising and facial injuries from the her mother as accurate and reliable when they knew or should have known that said injuries were the result of repeated child abuse,

k.  continued to rely upon explanations and assertions from the minor plaintiff's mother to exclude a diagnosis of child abuse as a cause of An█████and A████a's injuries despite the frequency of repeated complaints of facial bruising and trauma,

l.  continued to rely upon explanations and assertions from the minor plaintiff's mother to exclude a diagnosis of child abuse as a cause of An█████and A█████'s injuries upon learning that A█████ had sustained additional facial bruising and injuries on November 15, 2011,

m.  continued to rely upon explanations and assertions from the minor plaintiff's mother to exclude a diagnosis of child abuse as a cause of An█████ and A█████'s injuries upon learning that An█████ had sustained additional facial bruising and injuries on November 21, 2011,

n.  failed to properly obtain an accurate social history despite multiple complaints of bruising and facial injuries and the presence of child abuse indicators,

o.  failed to recommend additional medical treatment and/or testing for An█████ A█████ when they knew or should have known of the frequent and repeated child abuse of An█████ and/or A█████ that was occurring in the minor plaintiff's home,

p.  failed to provide proper medical treatment and/or testing for An█████ A█████ when they knew or should have known of the frequent and repeated child abuse of An█████ and/or A█████ that was occurring in the minor plaintiff's home,

q.  failed to properly refer An█████An█████ to a specialist in child maltreatment and abuse on October 18, 2011 or anytime thereafter when they knew or should have known of the frequent and repeated child abuse of An█████and/or A█████ that was occurring in the minor plaintiff's home,

r.  failed to properly refer An█████ A█████ to a specialist in child maltreatment and abuse on November 15, 2011 or anytime thereafter when they knew or should have known of the frequent and repeated child abuse of An█████ and/or A█████ that was occurring in the minor plaintiff's home,

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

s.   failed to consult with a specialist in child maltreatment and abuse on when they knew or should have known of the frequent and repeated child abuse of Ar███ and/or A███ that was occurring in the minor plaintiff's home,

t.   failed to properly obtain an accurate medical history despite multiple complaints of bruising and facial injuries and the presence of child abuse indicators,

u.   failed to recognize the risk factors and signs for child maltreatment and abuse on November 15, 2011 and anytime thereafter, and

v.   failed to medically screen and obtain an accurate medical and social history from the minor plaintiff and/or her sister, despite the presence child abuse indicators.

26.     During the course of the treatment the defendant Dr. Shaps and the defendant Generations acting through its agents, apparent agents, servants, and employees deviated from the acceptable standard of care incumbent of a physician and medical practice purportedly skilled and specializing in pediatric medicine.

27.     As a result of the negligence and carelessness of the defendant Dr. Shaps and the defendant Generations acting through its agents, apparent agents, servants, and employees the minor plaintiff suffers, and continues to suffer, injuries of a serious and permanent nature including serious mental illness and emotional distress, anxiety, depression, post traumatic stress disorder, fear, psychological and psychiatric scarring and physical injuries damages.

28.     As a further result thereof, the minor plaintiff has sought and received, and

continues to receive, treatment from mental health professionals and will continue to do so into the foreseeable future.

     29.    As a further result thereof, the future capacity of the minor plaintiff's ability to do well and succeed in school and life has likely been impaired and therefore her future ability to work, succeed and earn a living has been impaired.

     30.    As a further result thereof, the minor plaintiff's father, Hugo Angeles, was required to spend various sums of money for the medical care, treatment, drugs and devices necessitated by his daughter's injuries.

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

**WHEREFORE**, the Plaintiffs claim fair, just, and reasonable money damages.

THE PLAINTIFFS

By: _____
Joseph M. Barnes
THE REARDON LAW FIRM, P.C.
Their Attorneys

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

RETURN DATE: DECEMBER 17, 2013

| | | |
|---|---|---|
| THE ESTATE OF A█████A A██████ | : | SUPERIOR COURT |
| BY ITS ADMINISTRATOR HUGO | | |
| ANGELES, AR██████AN██████, A | : | J.D.  OF HARTFORD |
| MINOR, BY HUGO ANGELES HER | : | AT HARTFORD |
| NEXT FRIEND AND FATHER, | | |
| AND HUGO ANGELES INDIVIDUALLY | | |

V.

WINDHAM COMMUNITY MEMORIAL
HOSPITAL, INC., NORTHEAST
EMERGENCY MEDICINE
SPECIALISTS, LLC, HARTFORD HEALTH
CARE CORPORATION, MARK DZIEDZIC,
DEBORAH COGGESHALL, CONSTANTINE
MESOLOGITES, COREY ROY,
GENERATIONS FAMILY HEALTH CENTER
INC., BERETT SHAPS, JEFFERSON
RADIOLOGY P.C, AND STEVE LEE          :          NOVEMBER 21, 2013

## STATEMENT RE:  AMOUNT IN DEMAND

The amount, legal interest or property in demand is greater than Fifteen

Thousand and No/100 ($15,000.00) Dollars, exclusive of interest and costs.

THE PLAINTIFFS

By: _____
Joseph M. Barnes
THE REARDON LAW FIRM, P.C.
Their Attorneys

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ⋄ P.O. Drawer 1430 ⋄ New London, CT 06320 ⋄ Tel. (860) 442-0444 ⋄ Juris No. 102515

RETURN DATE: DECEMBER 17, 2013

| | | |
|---|---|---|
| THE ESTATE OF A███████ A█████████ | : | SUPERIOR COURT |
| BY ITS ADMINISTRATOR HUGO | | |
| ANGELES, ART██████ AN██████, A | : | J.D. OF HARTFORD |
| MINOR, BY HUGO ANGELES HER | : | AT HARTFORD |
| NEXT FRIEND AND FATHER, | | |
| AND HUGO ANGELES INDIVIDUALLY | | |

V.

WINDHAM COMMUNITY MEMORIAL
HOSPITAL, INC., NORTHEAST
EMERGENCY MEDICINE
SPECIALISTS, LLC, HARTFORD HEALTH
CARE CORPORATION, MARK DZIEDZIC,
DEBORAH COGGESHALL, CONSTANTINE
MESOLOGITES, COREY ROY,
GENERATIONS FAMILY HEALTH CENTER
INC., BERETT SHAPS, JEFFERSON
RADIOLOGY P.C, AND STEVE LEE           :          NOVEMBER 21, 2013

## CERTIFICATION

I hereby certify that I have made reasonable inquiry, as permitted by the

circumstances, to determine whether there are grounds for a good faith belief that there

has been negligence in the care and treatment of the Plaintiffs Hugo Angeles, the

Estate of A█████ An████s, and Ar██████ A██████.  This inquiry has given rise to a good

faith belief on my part that grounds exist for an action against each named Defendant in

this lawsuit.  I base this belief, in part, on the written and signed medical opinion of

similar health care providers, attached hereto as Exhibit A, Exhibit B, Exhibit C, and

Exhibit D in accordance with Connecticut General Statutes § 52-190a (as amended).

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street ◆ P.O. Drawer 1430 ◆ New London, CT 06320 ◆ Tel. (860) 442-0444 ◆ Juris No. 102515

Also attached is Exhibit E, a Petition for Extension of the Statute of Limitations in this lawsuit that was granted by the Connecticut Superior Court, Judicial District of New London on October 11, 2013.

THE PLAINTIFFS

By: _____
Joseph M. Barnes
THE REARDON LAW FIRM, P.C.
Their Attorneys

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

# EXHIBIT A

To Whom It May Concern:

I am board certified by the American Board of Pediatrics in both General Pediatrics and the sub-specialty of Child Abuse Pediatrics. I am in my 12th year as director of a regional child abuse evaluation program, a position I began after completing my fellowship (Child Abuse Pediatrics) and residency (Pediatrics). My responsibilities include clinical oversight of over 500 evaluations of children each year who present with concerns for sexual abuse, physical abuse, child neglect and child fatalities. I have been the medical consultant for a regional child fatality review team for the past 12 years. I am director of all child abuse pediatrics related clinical, administrative and educational activities for a regional outpatient child abuse evaluation center and a large children's hospital (including the emergency department, intensive care units and pediatrics floor). I am an Associate Professor of Clinical Pediatrics at an accredited medical school and teach medical students, residents and fellows. I regularly work with protective and investigative agencies on case specific issues and various committees. This includes development of mandated reporting policies and training, and developing regional systems for referrals when concern for potential abuse has been raised. I have published in the area of child abuse and am engaged in several active research projects.

I was asked by attorney Joseph Barnes from The Reardon Law Firm P.C. to review various records related to A█ and Ar█████ A████. These items include:

1. Windham Early Childhood Records - A███ Ar████
2. Windham Early Childhood Records - Ar████ A████ (sibling)
3. Generations Family Health Center Records -- A███ Ar████
4. Windham Community Memorial Hospital Records – A███ A████
5. Connecticut Children's Hospital Records – A███ a A████
6. State of Connecticut Chief Medical Examiner's Records – A████ Ar████
7. Department of Children and Families Records (related to the death of A████ Ar████)

1/2

Based on my review of the aforementioned documents, it is my opinion that the pediatrician, Dr. Berett Shaps, and Generations Family Health Center deviated from the standard of medical care with respect to A███a and Art████a A███s as follows:

1. Failure to recognize and accurately diagnose ongoing bruising as an indicator of child abuse.
2. Failure to recognize patterns of bruising that would be more concerning for abuse than a potential bleeding disorder.
3. Failure to diagnose abuse once all laboratory studies were back.
4. Failure to follow up on the recommended "second opinion" hematology consult while DCF case was open and abuse remained on the differential diagnosis.
5. Failure to diagnose a traumatic origin for the ongoing bruising.
6. After the 11/15/11 call documented in the record relaying ongoing bruising, failed to communicate the normal laboratory values that excluded a bleeding disorder.
7. Failure to recommend medical care after receipt of the 11/15/11 call with a report of continued bruising.
8. Failure to obtain a social history despite presence of abuse indicators and a history of domestic violence.
9. Failure to screen the sibling for potential child abuse indicators.

Respectfully Submitted,

# EXHIBIT B

To Whom it May Concern:

I have reviewed the medical records of A███ and A█████ A████ and have prepared the following opinion with regards to this case:

I am a physician licensed to practice medicine and certified by the American Board of Internal Medicine, the American Board of Emergency Medicine, and the American Board of Preventive Medicine. I am board certified to practice internal medicine, emergency medicine, and preventive medicine. I have practiced Emergency Medicine in the Department of Emergency Medicine at a Level I trauma center and major teaching hospital since 1986. I am a Professor of Emergency Medicine. I have reviewed the following records in connection with my opinions in the medical care rendered to A████ A████:

      (a) Windham Early Childhood Records – A████ a A███
      (b) Windham Early Childhood Records – Ar████ A████
      (c) Generations Family Health Center Records – A████ a
      (d) Windham Community Memorial Hospital Records – A████ A████
      (e) Connecticut Children's Hospital Records – A████ A████ s
      (f) State of Connecticut Chief Medical Examiner's Records – A████ A████
      (g) Department of Children and Families Record
      (h) Generations Family Health Center Records – Ar████ A████
      (i) Windham Community Memorial Hospital Records – Ar████ A████

I.    Based on the facts contained in these records, and my education, training, and experience, it is my expert medical opinion, to a reasonable degree of medical certainty, that the care and treatment that A████ A████ s received from Dr. Constantine Mesologites in the Emergency Department of the Windham Community Memorial Hospital on the 18th of October 2011, and the care and treatment that A████ A████ s received from Dr. Mark Dziedzic in the Emergency Department of the Windham Community Memorial Hospital on the 23rd of November 2011 deviated from the standard of medical practice for physicians practicing Emergency Medicine in a reasonable and prudent fashion according to the standard of care for a practitioner of Emergency Medicine in 2011 for the following reasons among others:

      (a)    A████ A████ was a 3-year-old female who was escorted to the Windham Community Memorial Hospital Emergency Department on the 18th of October 2011 by DCF workers from her Pediatrician's office at the request of her Pediatrician, Dr. Berett Shaps. Dr. Shaps had evaluated her in the office on that day for facial trauma and a "cut to her nose" which she had allegedly sustained according to her mother by falling into edge of the bed.

      (b)    A████ A████ had been worked up by Dr. Shaps previously for a coagulopathy to explain her increased bruising. Dr. Shaps had obtained a CBC and PT/PTT on August 31, 2011 which were completely normal. Subsequently Dr. Shaps documented a small ecchymosis on A████'s right upper arm on September 14th, 2011, and ecchymosis of her Left cheek and under her right eye on the 7th of October 2011. Her teacher also

documented a dark bruise on her left cheek on the 3rd of October 2011 and an elbow bruises on the 15th of October 2011.as well as an upper lip bruise and scab on the 14th of November, 2011 and a bruise on top of her ears and close to her lower eye on the 15th of November 2011.

(c) Dr. Shaps, in her note of the 18th of October documented, "Easy Bruising with normal coagulation factors….relocation from North Carolina secondary to a domestic violence case against the father. "On physical exam Dr. Shaps noted, "Positive nasal bridge trauma with significant periorbital and nasal ecchymosis and edema and flattened nasal bridge. …significant periorbital ecchymosis and edema and small ecchymotic lesion on the left upper arm…writer spoke with Dr. Mesologites at Windham Emergency Room regarding this referral… he is awaiting this patient….He (Dr. Meslogites) states that a CAT scan of the patient's facial bones was done and it was negative and he thought that the injury was consistent with the mechanism and mom is discharge home."

(d) Dr. Mesologites documents, " Face pain Periorbital for 2 days. The Onset is fall against wooden railing…Pediatrician called… concerned about patient's bruising and DCF involved…Mother came from NC because of abusive relationship… She is in a relationship now… no incidents of abuse… She had mentioned that patient had bruising… CBC PTT INR negative…" Dr. Mesologites, in his Physical Exam does not document any of the facial findings except to note " no other discolorations except on the face" Dr. Mesologites obtained a CT of the facial bones which was read by Dr. Lee as, " no fracture, mild soft tissue swelling frontally in the midline."

(e) Dr. Mesologites further documented, " Facial contusion: do not suspect neglect or abuse; no clinical findings or bruising. No other focal tenderness. …no signs or objective findings that are life or limb threatening. Medically screened and stable for disposition form the ED."

(f) On the 23rd of November, 2011, A████ A█████ was brought to the Emergency Department of the Windham Memorial Community Hospital where she was seen and evaluated by Dr. Mark Dziedzic. She presented according to Dr. Dziedzic, with, " scalp laceration posterior…struck in head with toy by sibling…Pt has been sick for 2 days prior…vomiting…no vomiting since trauma…Furthermore the patient/family denies FB sensation, weakness, numbness." Dr. Dziedzic documented on his skin exam only "a scalp laceration 2 cm posterior scalp" he also documented HEENT, Chest and Neuro… He did not document an abdominal examination although he also wrote, " temp 101…no source of infection on exam..likely secondary to viral illness that has been causing vomiting… low concern for abdominal process. ..spoke with family/parents to obtain additional information to treat patient…no signs or objective findings that are life or limb threatening. Medically screened and Stable for disposition from the ED." Dr. Dziedzic stapled the wound but did not document the procedure. A████ was discharged home with instructions to "have the sutures removed in seven days…." As noted in the Special Review conducted by DCF, " the incident was not reported to DCF."

(g) A████ was brought back to the hospital at 21:39 on the 23rd of November 2011 after allegedly collapsing at home. She was unresponsive and intubated. According to the Emergency Medicine physician, Dr. Gregory Shangold, she had bruising of the " left chest, left epigastric area, and left lateral hip." CT showed "diffuse peritoneal free fluid and free air as well as biliary air and multifocal airspace opacities" consistent with aspiration or pneumonia...She was then transported to Connecticut Children's Medical Center. Upon arrival she had pulseless electrical activity and after a brief

period of CPR, she was pronounced dead at 23:59 by the attending physician, Dr. Allison Cowl.

(h)     Dr. Cowl's examination documented, "multiple bruises of various sizes and ages on the hairline, lift cheek, left ear, chest bilaterally and entire anterior abdomen, flank bilaterally, left lumbar region, and right anterior leg." DCF was notified and a 96 hour hold was placed on At███a's younger sister, Ar███. At the time that the hold was placed, DCF noted that she had" multiple areas of bruising on her face that were dark purple in color and areas of bruising that were yellow and brown in color suggesting injures in different stages of healing. She had skeletal x-rays at that time that also showed a fracture of her finger.

(i)     A███ A███ was referred to the Associate Medical Examiner, Dr. Susan Williams, who reported, "2x 21/2  inch interrupted contusion of the left lateral forehead extending into the hairline over the temporal scalp, a ½" contusion of the left lateral cheek, a ¼ inch contusion  and a ½ inch contusion of the left side of the face, a contusion of the left side of the face adjacent to the nose, a ¼ inch abrasion present on the left side of the chin, an abraded of the upper lip with a ¼ inch contusion just to the right of the midline with an 1/8 inch contusion to the left of the midline with abrasion over the medial half of the lip... a ½ inch abraded contusion of the lower right lateral lip, a  2 inch contusion over the lift ear involving the helix ,the back of the ear, and the head behind the ear, three linear ¼ inch abrasions on the superior aspect of the ear helix, and 1/8 inch abrasion of the anterior aspect of the ear, four abrasions on top of the head, a subgaleal scalp hemorrhage of the left lateral and posterior scalp, a 1x1/2 inch contusion of the left neck, a healing contusion of the chest, abrasions of the left 4th finger, three contusions of the left leg and thigh.   There were multiple contusions of the thorax, flank, and abdomen and fractures of the 6th and 7th ribs. There was 900 cc of blood in the peritoneum with liver, pancreas, and bowel trauma. The cause of death: Blunt traumatic chest and abdominal injuries."

(j)     A special review by the Connecticticut Department of Children and Families into the death of A███ A███ concluded, " Medical providers  did not recognize the signs and symptoms of child abuse when evaluating A███ and her family....The community Standard of Care in Emergency Rooms and Pediatric Offices in this case does not meet the Standard of Care expected by the Department... A███ and her sister should have received more comprehensive assessments and physical examinations at the ED when A███ was seen the night before her death. Such assessments     were  warranted  given  A███a's  constellation  of  presenting symptoms...A review of past medical history/ED presentations should have resulted in a call to DCF on November 23, 2011, and, at a minimum, a more thorough exam. This did not occur, suggesting that either the record was not reviewed or the ED did not understand the significance of the information in front of them... Discharge planning for A███ on November 23, 2011 relied heavily on mother's capacity to observe and care for A███ and her sister without specific plans for further medical assessment or follow-up."

II.     It is my expert opinion based on my education, training, and experience, to a reasonable degree of medical certainty that Dr. Constantine Mesologites failed to uphold the standard of care of a reasonable and prudent physician practicing Emergency Medicine in 2011 and in fact, deviated from that standard of care in his evaluation and treatment of A███ A███ in the Emergency Department of the Windham Memorial Community

Hospital on the 18th of October 2011 by failing to document a complete examination of A█████ A█████ including a detailed description of her facial injuries, by failing to recognize that her injury was inconsistent with the story provided by the mother, by failing to recognize the clear risk factors for child maltreatment – a history of repeated bruising with a negative work up for coagulopathy, an injury inconsistent with the history, and a family history of violence, by failing to fully document a complete skin examination of A█████ A█████, by failing to obtain a skeletal trauma survey, by failing to admit A█████ A████s pending consultation with a specialist in child maltreatment or transferring her to Connecticut Children's Hospital where she could have been seen by a an expert in child maltreatment, and by discharging her from the Emergency Department without ascertaining that she was safe and was being discharged to a safe environment.

III.     It is my further expert medical opinion based on my education, training, and experience to a reasonable degree of medical certainty that Dr. Constantine Mesologites' deviation from the standard of care of a reasonable and prudent physician practicing Emergency Medicine in 2011caused or substantially contributed A█████ A████s to be returned to an unsafe environment where she continued to undergo maltreatment until her death from maltreatment and violent abuse on the 23rd of November 2011.

IV.     It is my further medical opinion based on my education, training, and experience, to a reasonable degree of medical certainty, that had Dr. Constantine Mesologites not deviated from the standard of care of a reasonable and prudent physician practicing Emergency Medicine in 2011 returning A█████ to an unsafe environment where she continued to undergo maltreatment and violent abuse, it is more likely than not that A████ A█████ would not have suffered severe traumatic abdominal trauma leading to her death on the 23rd of November 2011.

V.     It is my further expert medical opinion based on my education, training, and experience, to a reasonable degree of medical certainty that Dr. Mark Dziedzic failed to uphold the standard of care of a reasonable and prudent physician practicing Emergency Medicine in 2011 , and, in fact, deviated from that standard of care in his evaluation and treatment of A████ A█████ on the 23rd of November, 2011by 1) failing to review the medical record from A████ A████ Emergency Department visit on October 18th 2011, a record that would have alerted him to the concerns for child maltreatment, the involvement of DCF in A███a's care, and the need for more extensive examination of A█████ A█████ and communication with DCF and A████ A████ PCP; 2) failing to carry out and document a thorough history of physical examination of A████ A████ who, according to subsequent examinations carried out on that day by Dr. Cowl and the medical examiner, had multiple bruises of varying stages of healing on her face, scalp, ears, chest, and leg; 3) failing to document (and carry out) an examination of A████ A█████ abdomen inspite of writing that the source of her fever could not be an abdominal process. A physician practicing according to the standard of care of a reasonable and prudent physician practicing Emergency Medicine in 2011 would have reviewed the medical record, would have examined At████ A████ thoroughly, would have recognized the concerning constellation of history and physical examination and the potentially dangerous significance of the new injury and would not have discharged her from the Emergency Department without ascertaining that she was safe and was being discharged to a safe environment.

VI.     It is my further expert medical opinion based on my education, training, and experience to a reasonable degree of medical certainty that Dr. Mark Dziedzic's deviation from the standard of care of a reasonable and prudent physician practicing Emergency Medicine in 2011caused or substantially contributed A████ A████ to be returned to an unsafe

environment where she continued to undergo maltreatment until her death from maltreatment and violent abuse on the evening of the 23rd of November 2011.

VII.   It is my further medical opinion based on my education, training, and experience, to a reasonable degree of medical certainty, that had Dr. Mark Dziedzic not deviated from the standard of care of a reasonable and prudent physician practicing Emergency Medicine in 2011 returning A█████ to an unsafe environment where she continued to undergo maltreatment and violent abuse, it is more likely than not that A█████ A█████ would not have suffered severe traumatic abdominal trauma leading to her death on the evening of 23rd of November 2011.

Respectfully Submitted,

# EXHIBIT C

Mr. Joseph Barnes, Esquire
The Reardon Law Firm
160 Hempstead Street
P.O. Drawer 1430
New London, CT 06320

Re: Ar█ A█s and the Estate of At█ A█s, v. Windham Hospital, et. al.

Dear Attorney Barnes:

I have received the material you provided relating to the care provided to A█ and her sister, Artemis. This includes

- The two visits to Windham Hospital Emergency Department by the patient, A█ A█ on October 18, 2011 and November 23, 2011
- The material relating to the office visits made by the patient to her pediatric clinician at Generations Family Healthcare.
- Windham Early Childhood program notes.
- Connecticut Children's Medical Center records, November 24, 2011.
- Chief Medical Examiner records regarding A█'s death.
- Department of Children and Family Services records.

Based on my review of that material, I find a reasonable probability that the care provided by the Hospital staff, including Deborah Cogshell and Cory Roy, was less than adequate, and did not meet the acceptable standards of care for children presenting with this history and situation.

- The most prominent area of negligence concerns the fact that, on November 23, 2011, the child was not more fully examined, even with gastric symptoms and a low grade fever, and was allowed to go home to a questionably abusive situation.
- Even on the previous visit, on October 18, 2011 there were red flags in the child's situation, but the Hospital staff failed to intervene appropriately.
- There is no indication that the nursing staff, aware of the child's situation at home, made any pressing inquiry into other indicators of abuse besides the head laceration.
- They failed to properly identify signs and symptoms of child abuse on October 18, 2011, or any time after.
- They failed to prepare the child for a more thorough physical examination on November 23, 2011.
- They failed to obtain and consider the past social history despite the presence of abuse indicators.
- In the evidence of abuse of A█a, they failed to consider the other child in the home, and did not include Ar█ in any evaluation or examination, even though she was present at all At█'s visits to the Hospital.

I have based my observations and conclusion on forty years of Nursing, including ten years emergency department and pediatric practice, and supervision of other staff in those situations, as well as many years of quality assurance, clinical oversight, and legal case analysis.

I hope this information is helpful. Thank you for sending me this interesting case.

**EXHIBIT D**

Joseph M. Barnes, Esq.
Reardon Law Firm
160 Hempstead St
PO Box 1430
New London, Conn 06320

      **Re: Estate of A████ A████**

Dear Mr. Barnes:

I am a diagnostic radiologist, certified by the American Board of Radiology and am a Diplomat of the American Board of Radiology. I earned my undergraduate degree from the University of ____, and my medical degree from the University of ` ____ .. I completed my Diagnostic Radiology residency at the University of ` ____ .. in 1980. I was a fellow in Abdominal Imaging at _ University. I have been practicing Diagnostic Radiology since 1980. By virtue of my education, training and experience, I am qualified to render opinions on the standard of care in this case. I was practicing medicine at the time of the care rendered in this case.

I have reviewed the materials related to this case that you have provided me. These include:

1. Facial CT:10/18/11

2. Head CT: 11/23/11

3. Bone survey:11/24/11

4. Various medical records for both A████ and An███ A████ including records from Windham Community Memorial Hospital; and

5. DCF Records

## Case Summary and Opinions

Rosa Diaz, is mother to An████ A████ and A████ A████ Alexander Riz, who was Rosa's live-in companion, allegedly killed A███ a A███ on November 23, 2011. Prior to the homicide, multiple social workers and health care providers were involved in determining if clinical warning signs of child abuse, were in fact due to physical abuse. On October 18, 2011 A████ A████ presented to Windham Hospital with facial pain and bruising. On that date Dr. Stephen Lee, a radiologist at Windham Hospital, reviewed a CT scan of A████'s facial bones. Although radiologists are responsible for interpreting images obtained "to rule out child abuse" they cannot make diagnoses based upon findings outside the areas being imaged. As an example, a chest radiograph cannot exclude a toe fracture. According to the records I have reviewed, "Dr. Stephen Lee concluded that the explanation for A████'s injuries was consistent with the mother's account of how she sustained them. Dr Lee specifically stated that he had no concern of abuse or neglect of A████ at this time." It is my opinion to a reasonable degree of medical certainty that Dr Stephen Lee drew conclusions from his interpretation of facial imaging studies that were inappropriate and incorrect and that contributed to the delay in diagnosis of child abuse. It was inappropriate and a deviation from the applicable standard of care for Dr. Lee to rule out child abuse solely from his review of A███'s facial CT image.

I reserve the right to amend my opinion, if I am provided additional information.

**EXHIBIT E**

NO.

| | | |
|---|---|---|
| HUGO ANGELES, ADMINISTRATOR OF THE ESTATE OF A███████ A███████, HUGO ANGELES, INDIVIDUALLY, AND AR███████ A███████ | : : : | SUPERIOR COURT NEW LONDON AT NEW LONDON |
| V. | : | |
| GENERATIONS FAMILY HEALTH CENTER INC., BERETT SHAPS, WINDHAM HOSPITAL, MARK DZIEDZIC, NORTHEAST EMERGENCY MEDICINE SPECIALISTS, LLC, CONSTANTINE MESOLOGITES, DEBORAH COGGESHALL, COREY ROY, STEVE LEE, JEFFERSON RADIOLOGY P.C, AND HARTFORD HEALTH CARE CORPORATION : | | OCTOBER 11, 2013 |

## <u>PETITION FOR EXTENSION OF STATUE OF LIMITATIONS DATE</u>

Pursuant to Connecticut General Statute § 52-190a(b), the undersigned

respectfully petitions for a ninety (90) days extension of the statute of limitations date

regarding a possible suit against GENERATIONS FAMILY HEALTH

CENTER INC., BERETT SHAPS, WINDHAM HOSPITAL, MARK DZIEDZIC,

NORTHEAST EMERGENCY MEDICINE SPECIALISTS, LLC, CONSTANTINE

MESOLOGITES, DEBORAH COGGESHALL, COREY ROY, STEVE LEE,

JEFFERSON RADIOLOGY P.C., HARTFORD HEALTHCARE CORPORATION, and

others not yet known with respect to the Petitioners' claims of medical negligence that

# FILED

OCT 1 1 2013

SUPERIOR COURT - NEW LONDON
JUDICIAL DISTRICT AT NEW LONDON

THE REARDON LAW FIRM, P.C.
Attorneys at Law
160 Hempstead Street • P.O. Drawer 1430 • New London, CT 06320 • Tel. (860) 442-0444 • Juris No. 102515

occurred on or about October 18, 2011.  This extension of the statute of limitations date

is necessary to allow additional time for a reasonable inquiry to determine whether there

are grounds for a good faith belief that there has been negligence in the health care or

treatment of the petitioners, HUGO ANGELES, ADMINISTRATOR OF THE ESTATE

OF AT████ AN█████, HUGO ANGELES, INDIVIDUALLY, AND ART████

A██████.

THE PETITIONERS,

By: _____
Joseph M. Barnes, Esq.
The Reardon Law Firm, P.C.

NO.

| | | |
|---|---|---|
| HUGO ANGELES, ADMINISTRATOR | : | SUPERIOR COURT |
| OF THE ESTATE OF AT▮▮▮ A▮▮▮▮▮ | | |
| HUGO ANGELES, INDIVIDUALLY, AND | : | NEW LONDON |
| ART▮▮▮ A▮▮▮▮ | : | AT NEW LONDON |
| | | |
| V. | : | |
| | | |
| GENERATIONS FAMILY HEALTH | | |
| CENTER INC., BERETT SHAPS, WINDHAM | | |
| HOSPITAL, MARK DZIEDZIC, NORTHEAST | | |
| EMERGENCY MEDICINE SPECIALISTS, LLC, | | |
| CONSTANTINE MESOLOGITES, DEBORAH | | |
| COGGESHALL, COREY ROY, STEVE LEE, | | |
| JEFFERSON RADIOLOGY P.C, AND | | |
| HARTFORD HEALTH CARE CORPORATION : | | OCTOBER 11, 2013 |

## ORDER

The foregoing **Petition for Extension of Statue of Limitations Date** having

been presented, it is hereby:

GRANTED

DENIED

THE COURT

By: _____
Judge/Clerk/Asst. Clerk

10/11/13